Adams, J.
It was earnestly contended by the learned counsel for the appellants, upon the argument of this case, that the recovery herein might be upheld upon the theory of an implied warranty, and while we do not wish to be understood as holding that the complaint does not contain all the elements of a good pleading upon such a cause of *343 action, it must nevertheless be conceded, we think, that the case was tried and submitted to the jury upon an entirely different theory, viz., that of an express warranty accompanying the sale of the oil to defendants; and the important' question therefore which is presented for our consideration is whether or not the agent, Tucker, had authority to make such a warranty, or, to state it more correctly, had the plaintiffs any right to assume that he was invested with such authority?
Upon the decision of this case when first before this court (7 S. Rep., 118), it was held that an agent employed to do a particular act, is authorized to do it only in the usual and customary way of business, which usage or custom furnishes the rule by which his authority is to be measured, and that consequently a general selling agent, with authority to sell on credit, may warrant the soundness or quality of the article sold when such is the usage of trade.
No evidence of any such usage or custom was furnished by the plaintiffs upon the first trial, and for that reason, with others, a new trial was granted.
This difficulty appears to have been obviated upon the second trial, however, and considerable testimony was given by either party tending to prove or disprove the existence of such a custom.
The evidence thus furnished was conflicting and quite contradictory in its character, it is true, and yet we cannot say that it was not sufficient to warrant the conclusion reached by the jury, which establishes as facts in the case that the ^warranty was made; that it was authorized by the usage or custom of trade, and that such custom or usage was a reasonable one.
The defendants’ evidence tends to prove that the warranty thus made by their 4gent was not only without authority, but was in direct violation of their express instructions to him when he started out upon his mission of introducing their oil into general use.
Whether or not such was the fact is however of little consequence, inasmuch as it is not claimed that these instructions ever came to the knowledge of the plaintiffs; and in the absence of such knowledge on their part, they insist that they were justified in dealing with the agent upon the assumption that he was authorized to make the warranty relied upon.
The general rule is that an agent is authorized to do whatever is usual and customary to carry out the object of his agency; and it is for the jury to say what is usual under the circumstances of a given case.
If, in the sale of goods confided to him, it is the custom of the trade to give a warranty, the agent may give the warranty. Benjamin on Sales, § 624, and .cases cited.
*344 Moreover, the purchaser, while bound to take notice of any departure from the usage of trade by an agent, is presumed to understand the benefits conferred as well as the limitations imposed by any particular usage, and to contract with reference to them in making a purchase. Easton v. Clark, 35 N. Y., 224-232.
_ It follows, therefore, that in making the purchase of the oil in question, plaintiffs, being aware of what was customary under the circumstances, had the right to rely upon the authority, which usage conferred upon the defendants’ agent, to make the representations he did concerning the quality of the oil sold.
It is perhaps unnecessary to consider further this branch of the case, but it occurs to us there is yet another reason why plaintiffs had the right to act upon the assumption that defendants’ agent was authorized to give a warranty.
The oil sold was manufactured by the defendants by a process which was known only to them. Furthermore it was manufactured and designed to be used for a particular purpose, and these circumstances created an implied warranty on their part that it was not only free from any latent defect resulting from the process of manufacture, but also that it was fit and proper for the purpose for which it was designed and purchased. Hoe, et al., v. Sanborn, 21 N. Y., 552; Van Wyck v. Allen, 69 id., 61.
_ This proposition leads almost necessarily to the conclusion that if defendants might have relied upon an implied warranty respecting the quality of the oil purchased, they had an equal right to rely upon the authority of the agent, as an incident to his agency, to express in words that which the law implies. White et al. v. Miller, 71 N. Y., 118, 130, 131; Nelson v. Cowing, 6 Hill, 336.
In addition to the questions thus far considered, the jury were permitted to find whether the warranty given by defendants’ agent extended to all the oil purchased by the plaintiffs, or was limited to the first barrel sold. Their verdict justifies the conclusion that they found the warranty to be a continuing one, and it was for the supposed error arising from the submission of this question that a new trial was granted.
A careful examination of the evidence, as well as of the reasons advanced in the opinion of the learned trial justice, fails to convince us, however, that any error was committed in the disposition made of this question at the circuit.
A warranty should be construed in conformity with the rule governing the construction of contracts generally, i. e., so as to accord with the apparent intention of the parties, *345 and where the language is ambiguous, the surrounding circumstances may be looked at to ascertain the intention of the parties. Evansville Nat'l Bank v. Kaufmann et al., 93 N. Y., 273, 281.
The language of the warranty, in this case, was general. It applied to the article sold, and not to any lot or portion thereof. Indeed, at the time the warranty was given, no particular quantity had been spoken of. The defendants’ agent had called upon plaintiffs for the express purpose of introducing a new kind of oil which had never before been used by them, and in order to induce them to purchase and use it he said he would “guarantee the oil to be equal to any oil in the market;” that he would guarantee plaintiffs “'from any trouble from its use;” that “he would guarantee the use of this oil in our (defendants) factory;” that it would not injure their goods and that he would guarantee defendants from any damage to their goods arising • from its use; and, finally, he added, “this oil will scour easier than animal oil, but you use it on your wool and in your scouring process as you have Elaine, and you will be doubly sure and we will guarantee it as we have talked, if you use it in this way.”
The defendants thereupon ordered a barrel and said if it worked well they would order more. Thereafter, and before discovering any defect in the oil, two additional lots were ordered.
These are substantially the terms of the contract as testified to by plaintiffs’ witnesses, and, viewed in the light of surrounding circumstances, we are of the opinion that they must be held to have constituted a continuing warranty that all the oil purchased by the plaintiffs, upon the faith and in consequence of these representations of the agent, should prove satisfactory and “work well,” or, in other words, that the plaintiffs, when they ordered one barrel and said if ‘ ‘ it ” worked well they would order more, had reference, not to the contents of that particular barrel, but to all the oil purchased and used by them prior to the application of a satisfactory test of its quality.
Had they ascertained the result of such a test immediately upon using the quantity first ordered, it is quite possible that the contract of warranty would then have terminated. But such was not the case. On the contrary, the evidence tends to show that they were unaware of any breach of the contract until all the oil ordered by them had been used in the manufacture of carpets, as they had been directed to use it by defendant’s agent.
This view of the question would have made it proper for the trial court to have disposed of it as one of law rather *346 than of fact, and consequently to have withheld it from the consideration of the jury. Rindge v. Judson, 24 N. Y., 64; White’s Bank of Buffalo v. Myles, 73 id., 335.
It may, perhaps, be argued, that inasmuch as the meaning and effect of the language employed by the agent, and which constituted the contract of warranty, have been construed differently by different tribunals, and by the same tribunal on different occasions, it is sufficiently, ambiguous or so far susceptible to different constructions as to have made it necessary to submit the question, as one of fact, to the jury. That it was thus disposed of furnished no ground for complaint to the defendants however, as the charge was more favorable to them than they were entitled to claim.
No error appears to have been committed in the rule of damage stated to the jury as applicable to this case. Passinger v. Thorburn, 34 N. Y., 634; Milburn v. Belloni, et al., 39 id., 53; Borradaile v. Brunton, 8 Taunton, 535; White v. Miller (supra).
Nor did the fact that a bill of particulars had been furnished change the rule in any respect. It doubtless served to limit plaintiff’s recovery to the items and amounts specified in the bill, and we are unable to discover that the verdict is in excess of the amount thus authorized.
The evidence of the plaintiff, Wait, of which counsel complains, does not appear to have furnished the basis upon which the verdict was rendered.
The views thus expressed lead to a reversal of the order granting a new trial, and a direction of judgment for the plaintiffs upon the verdict.
Barker, P. J., and Dwight, J., concur.